Filed 3/10/14  Plummer v. T.H.E. Ins. Co. CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| MARK B. PLUMMER, | B246940 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC479944) |
| v. | |
| T.H.E. INSURANCE COMPANY, INC. et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of the County of Los Angeles, Elizabeth Allen White, Judge.  Affirmed and remanded with instructions.

Law Offices of Mark B. Plummer, Mark B. Plummer for Plaintiff and Appellant.

Lewis Brisbois Bisgaard & Smith, Gary M. Lape for Defendants and Respondents.

# INTRODUCTION

Plaintiff and appellant Mark Plummer (plaintiff) appeals from the trial court's order granting the Code of Civil Procedure section 425.16 (section 425.16) special motion to strike filed by defendants and respondents James Bohm (Bohm) and Bohm, Matson, Kegel & Aguilera LLP (his law firm). According to plaintiff, the trial court erred in finding that his complaint against Bohm and his law firm arose from their acts in furtherance of their right to petition and that plaintiff did not have a reasonable probability of prevailing on his complaint against Bohm and his law firm.

We hold that the complaint was based on protected activity and that the litigation privilege established by Civil Code section 47, subdivision (b), barred the claims asserted therein against Bohm and his law firm. We therefore affirm the order granting the special motion to strike.

# FACTUAL AND PROCEDURAL BACKGROUND

## A.     First Amended Complaint

In the operative first amended complaint, plaintiff named Bohm and his law firm as additional defendants[1] and asserted against them causes of action for conversion and intentional interference with prospective economic advantage. In the conversion cause of action, plaintiff alleged that Bohm and his law firm possessed and controlled funds belonging to plaintiff. According to plaintiff, "[t]he damages herein alleged were the natural and probable result of a prior agreement between the [d]efendants, and each of them, with each other, to perform wrongful or illegal acts. Specifically, [d]efendants conspired to deny [p]laintiff the fees to which he was entitled by issuing settlement checks without naming him as a payee and issuing a check to counsel for the judgment

---

[1]     Bohm and his law firm were not named in the original complaint, which was asserted against T.H.E. Insurance Company, Inc.

creditor pursuant to an agreement that they would abuse the process of the court to further deny Plaintiff the funds which belonged to him."

Plaintiff alleged that, in connection with the settlement of a tort action, he obtained a lien for attorney fees and costs in the amount of $113,845.75. Through its attorneys, plaintiff notified the insurance company that would fund the settlement of his lien and requested that he be named as a payee on all settlement checks. Thereafter, the insurance company issued two checks: one for $970,075 for the clients' share and the attorneys and another for $29,025 "solely for attorney fees." Plaintiff did not receive any amount from the $970,075 check and was entitled to the entire amount of the $29,025 check.

At a deposition, and several times thereafter, plaintiff demanded that the insurance company and its attorneys turn the $29,025 check over to plaintiff or, in the alternative, deliver a check in that amount made payable to all claimants so that it could be placed in a joint, interest bearing trust account, as was plaintiff's right, pending the recording of a judgment. Notwithstanding plaintiff's demand, the insurance company and its attorneys refused to turn the $29,025 check over to plaintiff or to issue a joint check.

Instead, the insurance company and its attorneys issued a replacement check in the amount of $29,025 that excluded plaintiff as a payee and named only Bohm's law firm as payee pursuant to an agreement under which Bohm and his law firm "would abuse the process of the Court for the purpose of further depriving [p]laintiff of the money which belonged to him." Even though Bohm and his law firm had no legal standing to do so because they represented a claimant to the $29,025, they filed a meritless interpleader action while keeping the $29,025 "'unattachable'" in their client trust account for the purpose of denying plaintiff access to the funds that belonged to him. While a dispositive motion in the interpleader action was pending against Bohm and his law firm, they finally paid plaintiff the $29,025.

In the tortious interference action, plaintiff, based on the same factual allegations as the conversion claim, alleged that he had a reasonable expectation of future economic benefit in the $29,025 and that, inter alia, Bohm and his law firm interfered with that benefit. According to plaintiff, the insurance company and its attorneys issued the

3

$29,025 check to Bohm and his law firm for the purpose of abusing the process of the court and denying plaintiff the money that had already been adjudicated as belonging to him.

**B.     Anti-SLAPP Motion[2]**

Bohm and his law firm responded to the first amended complaint by filing an anti-SLAPP motion under section 425.16.  The motion was made on the grounds that each cause of action against Bohm and his law firm arose from acts in furtherance of their rights to petition or free speech and plaintiff could not establish that there was a probability that he would prevail on either claim.

The motion was supported by the declaration of Bohm who asserted the following facts.  In or about November 2011, Bohm and his law firm came into possession of $29,025 and placed the funds in the law firm's attorney trust account.  At the time, entitlement to those funds was being disputed between Andrew Bisom, Bohm's client, and plaintiff.  The dispute between Bisom and plaintiff arose from the following facts: Bisom and plaintiff jointly represented the Acosta family in another legal matter. Because they became displeased with plaintiff's legal services, the Acosta family "fired" plaintiff, and Bisom ultimately settled the matter with the assistance of cocounsel. Plaintiff then made a claim against Bisom and his cocounsel alleging unpaid funds relating to the resolution of the legal matter.

Because Bohm was unable to resolve the conflicting demands by Bisom and plaintiff, was unable to determine to whom the funds should be delivered, and was willing to deliver the funds to the person legally entitled to them, he filed an interpleader action in December 2011 to have the dispute determined by the court.  After filing the interpleader action, Bohm filed several ex parte applications to deposit the funds with the court and to obtain an order discharging him of liability with respect to the funds.  Bohm also requested that Bisom and plaintiff litigate their claims to the funds without Bohm's

---

[2]     SLAPP is an acronym for "Strategic Lawsuits Against Public Participation." (*Equilon Enterprises, LLC v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 57, fn.1.)

4

participation.  Nevertheless, plaintiff opposed Bohm's attempts to deposit the funds with the trial court.

In January 2012, plaintiff and Bohm reached an agreement under which Bohm would deposit the funds with the trial court in the interpleader action and be discharged of all liability with respect to the funds.  As part of that agreement, plaintiff and Bisom agreed that the trial court should not return the funds to Bohm as he claimed no interest in the funds.  Bohm applied ex parte for an order enforcing his agreement with plaintiff, but the trial court denied the application without prejudice on the grounds that the trial court could not be bound by the agreement that the funds should not be returned to Bohm. Thereafter, the dispute between Bisom and plaintiff was resolved in a related proceeding. As a result, Bohm dismissed the interpleader and distributed the funds to plaintiff.

### C.    Plaintiff's Opposition

Plaintiff opposed the anti-SLAPP motion arguing that the conduct of Bohm and his law firm in cashing, depositing, and attempting to interplead the disputed funds was not protected activity under section 425.16.  In addition, plaintiff contended that there was a reasonable probability that he would prevail on the merits of his conversion and intentional interference claims.  Plaintiff's opposition was supported by his declaration that asserted the following facts.  On November 21, 2011, the insurance company issued a check for $29,025 payable to the order of the "Attorney Trust Account of Mr. Bohm and Mr. Bisom and Mr. Plummer."

According to plaintiff, when he asked the attorney for the insurance company why he forwarded the $29,025 check to Bohm, the attorney stated that Bohm "had promised to deal with it if [the attorney] would send the check in a way that allowed it to be cashed without [plaintiff's] endorsement."  When plaintiff asked if the insurance company's attorney thought that "the adverse party's attorney [Bohm] would most likely jerk [plaintiff] around, [the attorney] said that it was a possibility."

On December 2, 2011, plaintiff wrote a letter to Bohm enclosing a copy of the judgment in plaintiff's favor against Bisom and requesting that Bohm forward to plaintiff

5

the $29,025 check in exchange for a partial satisfaction of judgment. Bohm repeatedly told plaintiff that he agreed that the $29,025 belonged to plaintiff and that asking for it "was like preaching to the choir." But Bohm also said that "he had to do what his client, Mr. Bisom requested, which was not to pay [plaintiff]." When plaintiff informed Bohm that plaintiff was scheduling a judgment debtor's exam for Bohm so plaintiff could attach the $29,025, Bohm filed the interpleader action.

The trial court in the interpleader action refused to enforce the stipulation to deposit the money in the court subject to certain conditions because an interpleader had been filed and it was a new action. Plaintiff made six court appearances and spent hours litigating the interpleader action which, according to plaintiff, "was for all practical purposes the exact same litigation as [plaintiff] had previously arbitrated with . . . Bisom." Ultimately, plaintiff "had to cut thousands of dollars off the amount which [he] was owed because of the expense of relitigating everything all over again in the interpleader action and the extensive delays. [Bohm] made it clear that . . . was his intent."

In addition to his declaration, plaintiff supported his opposition with a request for judicial notice attaching: (1) an association of counsel filed by Bisom reflecting that Bohm represent Bisom in plaintiff's lawsuit against Bisom; (2) the trial court docket for that lawsuit showing that no disassociation of attorneys was ever filed; (3) the arbitration award in favor of plaintiff against Bisom; and (4) the judgment entered in that arbitration award.

### D. Order Granting Anti-SLAPP Motion and Awarding Attorney Fees

After a hearing on the anti-SLAPP motion, the trial court entered an order finding that the action against Bohm and law firm arose from acts in furtherance of their rights of petition and free speech in connection with a public issue and that plaintiff had not shown through competent evidence that there was a reasonable probability of prevailing on any of the causes of action asserted against Bohm and his law firm. The trial court further

6

found that Bohm and his law firm were entitled to attorney fees under section 425.16, subdivision (c)(1) in the amount of $6,400 and costs in the amount of $930.

## DISCUSSION

### A. Standard of Review

"'Review of an order granting or denying a motion to strike under section 425.16 is de novo. (*Sylmar Air Conditioning v. Pueblo Contracting Services, Inc.* (2004) 122 Cal.App.4th 1049, 1056 [18 Cal.Rptr.3d 882].) We consider "the pleadings, and supporting and opposing affidavits . . . upon which the liability or defense is based." (§ 425.16, subd. (b)(2).) However, we neither "weigh credibility [nor] compare the weight of the evidence. Rather, [we] accept as true the evidence favorable to the plaintiff [citation] and evaluate the defendant's evidence only to determine if it has defeated that submitted by the plaintiff as a matter of law." (*HMS Capital, Inc. v. Lawyers Title Co.* (2004) 118 Cal.App.4th 204, 212 [12 Cal.Rptr.3d 786].)' (*Soukup v. Hafif* [(2006)] 39 Cal.4th [260,] 269, fn. 3.)" (*Flatley v. Mauro* (2006) 39 Cal.4th 299, 325-326.)

### B. Legal Principles

"In 1992, the Legislature enacted section 425.16, the anti-SLAPP statute, to provide for the early dismissal of unmeritorious claims filed to interfere with the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances. (*Martinez v. Metabolife Internat., Inc*. (2003) 113 Cal.App.4th 181, 186 [6 Cal.Rptr.3d 494].) The Legislature authorized the filing of a special motion to strike such claims (§ 425.16, subds. (b)(1), (f)), and expressly provided that section 425.16 should 'be construed broadly.' (§ 425.16, subd. (a); see *Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1119 [81 Cal.Rptr.2d 471, 969 P.2d 564].) Such a motion requires a two-step process. First, the defendant must make a prima facie showing that the 'cause[s] of action . . . aris[e] from' the defendant's actions 'in furtherance of the [defendant's] right of . . . free speech . . . in connection with a public

7

issue.' (§ 425.16, subd. (b)(1).) If a defendant meets this threshold showing, the plaintiff must establish 'a probability that the plaintiff will prevail on the claim[s].' (*Ibid.*)" (*Club Members for an Honest Election v. Sierra Club* (2008) 45 Cal.4th 309, 315-316.) To demonstrate a probability of prevailing, a plaintiff need only submit a prima facie showing of facts supporting the plaintiff's claim, and we consider that issue under a standard similar to that employed in determining nonsuit, directed verdict, or summary judgment motions. (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 88-89; *Paiva v. Nichols* (2008) 168 Cal.App.4th 1007, 1016-1017.)

### C.    Analysis

#### 1.    Right of Petition

"The anti-SLAPP statute applies to acts taken 'in furtherance of the person's right of petition or free speech' as defined in section 425.16, subdivision (e). (§ 425.16, subd. (b)(1).) Section 425.16, subdivision (e) defines acts in furtherance of the rights of petition and free speech to include 'any written or oral statement or writing' made before a legislative, executive, or judicial body, or any other official proceeding authorized by law, or in connection with an issue under consideration or review by such bodies or officials. (§ 425.16, subd. (e)(1), (2).)" (*Tichinin v. City of Morgan Hill* (2009) 177 Cal.App.4th 1049, 1061 (*Tichinin*).)

"In general, whether a cause of action is subject to a motion to strike under the SLAPP statute turns on whether the gravamen of the cause of action targets protected activity. [Citations.] . . . [¶] Where, as here, a cause of action is based on both protected activity and unprotected activity, it is subject to section 425.16 '"unless the protected conduct is 'merely incidental' to the unprotected conduct."' (*Peregrine Funding, Inc. v. Sheppard Mullin Richter & Hampton LLP* (2005) 133 Cal.App.4th 658, 672 [35 Cal.Rptr.3d 31] (*Peregrine Funding*) [first prong of SLAPP analysis met where the allegations of loss resulting from protected activity were not merely incidental or collateral to unprotected activity]; see *Mann v. Quality Old Time Service, Inc.* (2004) 120

8

Cal.App.4th 90, 104 [15 Cal.Rptr.3d 215] (*Mann*) [because the defendants' reports to government agencies formed a substantial part of the factual basis for defamation and trade libel claims, the claims were subject to the SLAPP statute even though also based on nonprotected statements].)" (*Haight Ashbury Free Clinics, Inc. v. Happening House Ventures* (2010) 184 Cal.App.4th 1539, 1550-51.)

Plaintiff contends that the acts of Bohm and his law firm upon which his complaint was based did not constitute protected activity under section 425.16. According to plaintiff, because his conversion and intentional interference claims against Bohm and his law firm were based on acts that occurred prior to the filing of the interpleader action, they did not constitute activity protected under section 425.16. In addition, plaintiff contends that the interpleader was "sham litigation"—because Bohm was not a disinterested party—and therefore did not constitute a valid exercise of rights protected under section 425.16.

Although plaintiff contends that Bohm and his law firm aided and abetted certain actions by the insurance company and its lawyers, which actions all preceded the filing of the interpleader action, the gravamen of the first amended complaint against Bohm and his law firm was that they agreed with the insurance company and its attorneys to "abuse the process of the Court for the purpose of further depriving [p]laintiff of the money which belonged to him." According to the first amended complaint, in furtherance of the agreement to abuse the process of the court, Bohm and his law firm filed a "meritless interpleader action while keeping the money 'unattachable' in their [a]ttorney-[c]lient [t]rust [a]ccount for the purpose of denying [p]laintiff access to funds which belonged to him." It was only after plaintiff filed a dispositive motion in the interpleader action that Bohm and his law firm released the money to plaintiff.

Based on those allegations, the conduct of Bohm and his law firm on which the complaint was based was the agreement, and subsequent acts taken in furtherance of that agreement, to use the processes of the trial court, in the form of the allegedly meritless interpleader action, to continue to deny plaintiff access to the funds to which he claimed

9

he was entitled. As such, the gravamen of the claims against Bohm and his law firm implicated their right to petition the trial court, a right that is protected by section 425.16.

Plaintiff's contention that the filing of the interpleader was not a valid exercise of rights protected by section 425.16 is based upon the "sham litigation" exception to the so-called *Noerr-Pennington* doctrine,[3] a federal law concept initially developed in the antitrust context that provides immunities and protections similar to those provided under section 425.16. (*Premier Medical Management Systems, Inc. v. California Insurance Guarantee Assn.* (2006) 136 Cal.App.4th 464, 478) The sham litigation exception has two elements, the first based on an objective standard and the second on a subjective standard. The first element requires "the 'pursuit of claims so baseless that no reasonable litigant could realistically expect to secure favorable relief.'" (*Wilson v. Parker, Covert & Chidester* (2002) 28 Cal.4th 811, 820.) The second element requires that the purported exercise of the right to petition was "subjectively motivated by a concealed wrongful purpose to use the judicial process itself to harm the other party." (*Tichinin, supra,* 177 Cal.App.4th at p. 1065, fn. 8.)

As to the first element's objective standard, under which we ignore the allegations and testimony concerning Bohm's subjective intent, the operative complaint alleged that Bohm came into possession of the $29,025 check, deposited it in his firm's trust account, and then filed an interpleader action with respect to those funds. Moreover, Bohm

---

[3]     "In *Eastern R. Conf. v. Noerr Motors* (1961) 365 U.S. 127 [5 L.Ed.2d 464, 81 S.Ct. 523] (*Noerr*), trucking companies sued railroad companies claiming their efforts to influence legislation regulating trucking violated the Sherman Act (15 U.S.C. § 1 et seq.). (365 U.S. at p. 129.) The court held that the Sherman Act did not bar people from associating to persuade the government to take particular action. (365 U.S. at pp. 136-137.) In reaching this conclusion, the court opined that construing the Sherman Act to reach such conduct 'would raise important constitutional questions' concerning the right of petition and then stated, 'we cannot . . . lightly impute to Congress an intent to invade . . . freedoms' protected by the Bill of Rights. (365 U.S. at p. 138.) [¶] In *Mine Workers v. Pennington* (1965) 381 U.S. 657 [14 L.Ed.2d 626, 85 S.Ct. 1585] (*Pennington*), the court extended this antitrust immunity to those engaging in lobbying activities directed toward executive branch officials, regardless of any anticompetitive intent or purpose." (*Tichinin, supra*, 177 Cal.App.4th at p. 1064, fn. 7.)

testified in his declaration that he could not resolve the dispute between Bisom and plaintiff over the check, could not determine which party was entitled to the funds, and was willing to turn the funds over to the party legally entitled to them. Given those factual allegations and that testimony, we cannot conclude that no reasonable attorney in Bohm's position could have expected to secure favorable relief. To the contrary, a reasonable attorney in Bohm's position may well have concluded that interpleading the funds was a prudent course of action. Therefore, because the interpleader action was not "sham litigation," it qualified as protected activity under section 425.16.

### 2. *Probability of Success*

"'In order to establish a probability of prevailing on the claim [citation], a plaintiff responding to an anti-SLAPP motion must "'state . . . and substantiate[] a legally sufficient claim.'" [Citation.] Put another way, the plaintiff "must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited." [Citations.]' (*Wilson v. Parker, Covert & Chidester*[, *supra,*] 28 Cal.4th [at p.] 821 [123 Cal.Rptr.2d 19, 50 P.3d 733].) [¶] In determining whether a plaintiff has shown a probability of prevailing on the merits, we employ a standard 'similar to that employed in determining nonsuit, directed verdict or summary judgment motions. [Citation.]' (*Paulus* [*v. Bob Lynch Ford, Inc.* (2006)] 139 Cal.App.4th [659,] 672.) However, '[a] motion to strike under section 425.16 is not a substitute for a motion for a demurrer or summary judgment [citation]. In resisting such a motion, the plaintiff need not produce evidence that he or she can recover on every possible point urged. It is enough that the plaintiff demonstrates that the suit is viable, so that the court should deny the special motion to strike and allow the case to go forward.' (*Wilbanks v. Wolk* (2004) 121 Cal.App.4th 883, 905 [17 Cal.Rptr.3d 497].)" (*Tichinin, supra*, 177 Cal.App.4th at p. 1062.)

11

Plaintiff maintains that he established a probability of prevailing on the merits because he prevailed against the other defendants,[4] Bohm and his law firm were complicit in the tortious actions of those other defendants, and, by cashing the check, Bohm and his law firm actively aided and abetted the other defendants' tortious activity. In response, Bohm and his law firm contend, as they did in the trial court, that plaintiff could not establish that there was a probability he would prevail on the merits because, inter alia, his claims against them were barred by the litigation privilege established in Civil Code 47, subdivision (b). We agree that Civil Code section 47, subdivision (b) barred the tort claims against Bohm and his law firm.

"'The principal purpose of [Civil Code] section [47, subdivision (b)] is to afford litigants and witnesses [citation] the utmost freedom of access to the courts without fear of being harassed subsequently by derivative tort actions.' (*Silberg v. Anderson* (1990) 50 Cal.3d 205, 213 [266 Cal.Rptr. 638, 786 P.2d 365].) Additionally, the privilege promotes effective judicial proceedings by encouraging '"open channels of communication and the presentation of evidence"' without the external threat of liability (*ibid*.), and 'by encouraging attorneys to zealously protect their client's interests.' (*Id.* at p. 214.) 'Finally, in immunizing participants from liability for torts arising from communications made during judicial proceedings, the law places upon litigants the burden of exposing during trial the bias of witnesses and the falsity of evidence, thereby enhancing the finality of judgments and avoiding an unending roundelay of litigation, an evil far worse than an occasional unfair result.' (*Ibid*.)" (*Flatley v. Mauro, supra*, 39 Cal.4th at p. 321-322.)

"To accomplish these objectives, the privilege is 'an "absolute" privilege, and it bars all tort causes of action except a claim of malicious prosecution.' (*Hagberg v. California Federal Bank* (2004) 32 Cal.4th 350, 360 [7 Cal.Rptr.3d 803, 81 P.3d 244].) The litigation privilege has been applied in 'numerous cases' involving 'fraudulent communication or perjured testimony.' (*Silberg v. Anderson, supra,* 50 Cal.3d at p. 218;

---

[4] The action against the other defendants apparently settled without a disposition on the merits.

12

see, e.g., *Home Ins. Co. v. Zurich Ins. Co.* (2002) 96 Cal.App.4th 17, 20, 22-26 [116 Cal.Rptr.2d 583] [attorney's misrepresentation of available insurance policy limits to induce the settlement of a lawsuit]; *Doctors' Co. Ins. Services v. Superior Court* (1990) 225 Cal.App.3d 1284, 1300 [275 Cal.Rptr. 674] [subornation of perjury]; *Carden v. Getzoff* (1987) 190 Cal.App.3d 907, 915 [235 Cal.Rptr. 698] [perjury]; *Steiner v. Eikerling* (1986) 181 Cal.App.3d 639, 642-643 [226 Cal.Rptr. 694] [preparation of a forged will and presentation of it for probate]; *O'Neil v. Cunningham* (1981) 118 Cal.App.3d 466, 472-477 [173 Cal.Rptr. 422] [attorney's letter sent in the course of judicial proceedings allegedly defaming his client].)  The privilege has also been held to apply to 'statements made prior to the filing of a lawsuit.'  (*Hagberg v. California Federal Bank, supra,* 32 Cal.4th at p. 361.)"  (*Flatley v. Mauro, supra*, 39 Cal.4th at p. 322.)

Here, the filing of the interpleader action, as well as any communications made by Bohm and his law firm concerning the disputed funds that resulted in that action, were actions taken either during the course of or in anticipation of litigation.  The funds in dispute derived from the settlement of a tort claim and plaintiff, who had a judgment against Bisom, had threatened previously to attach them while they were in the possession of the insurance company's attorney.  Plaintiff also informed Bohm and his law firm about his judgment against their client, Bisom, and requested that they either deliver the funds to him or deposit them with the court.  Thus, any and all communications by Bohm and his law firm—both before and after the filing of the interpleader action—concerning the disputed funds were privileged under Civil Code 47, subdivision (b), and could not form the basis of any tort action against them, other than malicious prosecution.  The trial court, therefore, correctly concluded that plaintiff had not demonstrated that he had a probability of prevailing on the merits of his tort claims against Bohm and his law firm.

13

**DISPOSITION**

The order granting the special motion to strike and awarding attorney fees, as well as the judgment based thereon, are affirmed.  Bohm and his law firm are awarded costs on appeal and the matter is remanded to the trial court to determine whether Bohm and his law firm are entitled to attorney fees incurred on appeal and, if so, the reasonable amount of such fees.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

MOSK, J.

We concur:

TURNER, P. J.

MINK, J.[*]

---

[*]    Retired Judge of the Superior Court of Los Angeles County, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

14